**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**CORNELL F. DAYE,**

       **Plaintiff,**

**v.**                            **Case No. 2:11-cv-00106**

**DAVID BALLARD, Warden,
Mount Olive Correctional Complex,
JASON COLLINS, Associate
Warden of Programs,
MARK CRAWFORD, Librarian, and
LT. CURTIS DIXON,**

       **Defendants.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

On February 14, 2011, the plaintiff, who is currently an inmate at Huttonsville Correctional Center, filed a Complaint against these defendants, who are prison staff at Mount Olive Correctional Complex, where the plaintiff was formerly incarcerated. He alleges that the defendants "retaliated and conspired to retaliate against him for exercising his right to access the courts and for assisting other inmates in doing so." (Complaint, ECF No. 2, at 2.)

> He also alleges that certain Defendant's [sic] named in this complaint violated his right to due process, denied him equal protection of the law, were deliberately indifferent to his injuries, and that he was subject to the State torts of malicious abuse of process (malicious prosecution) and retaliation from the prison authorities in retaliation for exercising his right to access the courts.

*Id.* at 2-3.

This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## **PROCEDURAL HISTORY**

On July 7, 2011, Chief Judge Goodwin issued a Memorandum Opinion and Order adopting the undersigned's Proposed Findings and Recommendation, and dismissing Counts One, Two, Five, Seven, Eight, Eleven, and Thirteen of the plaintiff's Complaint. (ECF No. 23.)  The plaintiff's appeal of Chief Judge Goodwin's Memorandum Opinion and Order was dismissed for lack of jurisdiction, because it was neither a final order nor an appealable interlocutory or collateral order.  *See Daye v. Ballard*, No. 11-6958 (4th Cir., Dec. 19, 2011).  A mandate issued on January 10, 2012.  (ECF No. 34.)

The following claims remain pending before this court:

In Count Three, the plaintiff alleges that, from October 25, 2009, through November 25, 2009, defendants Crawford and Ballard denied him access to legal assistance, treatise materials, and research materials while he was in the process of prosecuting a habeas corpus petition in the Circuit Court of Fayette County (*Daye v. Ballard*, Case No. 09-AA-3).  (ECF No. 2, ¶¶ 24-26, 41-42.)

In Count Four, the plaintiff alleges that, on April 30, 2010, defendant Crawford retaliated against the plaintiff by suspending him from the law library for a period of 30 days in response to the plaintiff having assisted inmate Michael Hicks with his legal work, while also typing a letter to the plaintiff's own attorney.  The plaintiff alleges that Crawford's motivation for this action was to prevent the plaintiff and Hicks from exercising their right of access to the courts.  (*Id.*, ¶¶ 27-30, 43-44.)

In Count Nine, the plaintiff makes a related claim, alleging that defendants Crawford, Collins and Dixon conspired to retaliate against the plaintiff in relation to his suspension from the law library on April 30, 2010.  (*Id.*, ¶¶ 27-30, 53-54.)

In Count Six, the plaintiff alleges a claim of malicious prosecution or abuse of process based upon defendant Crawford's initiation of a disciplinary action against the plaintiff on June 4, 2010.  The plaintiff further alleges that the disciplinary action lacked probable cause and was ultimately resolved in the plaintiff's favor.  (*Id.*, ¶¶ 31-33, 47-48.)

In Count Ten, the plaintiff alleges a claim of supervisory liability against defendant Ballard.  The plaintiff alleges that defendant Ballard failed to properly train defendants Collins and Crawford concerning their legal obligations with regard to the constitutional rights of inmates and the limits of their power.  The plaintiff further alleges that defendant Ballard had actual knowledge of constitutional injuries to the plaintiff based upon the actions of defendants Crawford, Collins and Dixon, and tacitly authorized or otherwise encouraged those defendants to continue to hinder the plaintiff's access to the courts.  (*Id.*, ¶¶ 55-56.)

In Counts Twelve and Fourteen, the plaintiff alleges violations of his right to due process of law based upon the defendants' use of rules concerning the possession of other inmates' legal work, and the prohibition of assisting other inmates with legal work, that were not official Division of Corrections policies and were not properly promulgated in accordance with state law.  The plaintiff alleges that these rules did not provide inmates with proper notice of the rule or the applicable punishment, in violation of the plaintiff's due process rights.  The plaintiff further alleges that prison authorities

did not equally apply the rules to similarly situated inmates, in violation of the plaintiff's equal protection rights.  (*Id.*, ¶¶ 1-14, 19-24, 59-60, 63-64.)

The plaintiff seeks a declaratory judgment declaring that Mount Olive Correctional Complex's practices, policies, customs, or otherwise its overall policy governing its court access program and legal copy scheme are unconstitutional and unenforceable.[1]  The plaintiff also seeks monetary relief.  (*Id.*, ¶¶ 65-68.)

On May 18, 2011, the defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 19) and a Memorandum of Law in support thereof (ECF No. 20.)   The Motion to Dismiss asserts that the Complaint should be dismissed with prejudice because all of the defendants, in their official capacities, are entitled to immunity under the Eleventh Amendment.  (*Id.* at 6-7.)  The Motion to Dismiss further asserts that each of the remaining counts in the plaintiff's Complaint fails to state a claim upon which relief can be granted, and addresses each claim in turn.  (*Id.* at 7-14.)

On May 31, 2011, the plaintiff filed a Reply to the Defendants' Motion to Dismiss (ECF No. 21) and a Memorandum in support thereof (ECF No. 22).  Collectively, these documents will be referred to as "the plaintiff's Response to the Defendants' Motion to Dismiss."  The plaintiff's Response objects to various characterizations of his claims by the defendants and addresses each claim and defense in turn.

The defendants did not file a reply brief.  This matter is ripe for determination. The undersigned will address the defenses raised by the defendants and the merits of each of the plaintiff's remaining claims in the Analysis section *infra*.

---

[1]   Paragraph 7 of the Complaint discusses claims for injunctive relief.  (ECF No. 2 at 3, ¶ 7.)  However, the plaintiff makes no actual request for injunctive relief in the remainder of the Complaint.  As will be further discussed in section A of the Analysis, the plaintiff's claims for declaratory and injunctive relief were mooted by his transfer to Huttonsville Correctional Center, before he filed his Complaint.

## <u>STANDARD OF REVIEW</u>

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

The defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## ANALYSIS

**A.     The plaintiff's claims for declaratory and injunctive relief are moot.**

Before addressing the specific arguments made by the defendants in their Motion to Dismiss, the undersigned must address the plaintiff's claims for declaratory and injunctive relief, which were not specifically addressed in the motion.  To the extent that the plaintiff is seeking declaratory or injunctive relief concerning the conduct of the defendants, as well as the constitutionality and validity of the policies and procedures at MOCC, those claims are moot.  The power of the federal courts to adjudicate claims turns on the existence of a case or controversy.  U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue."  *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.")

The plaintiff had already been transferred to Huttonsville Correctional Center at the time he filed the instant Complaint.  Accordingly, any claims for declaratory or injunctive relief made in his Complaint were already moot.  Moreover, the plaintiff cannot seek relief on behalf of other inmates.  For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's request for a "declaratory judgment declaring that Mount Olive practices, customs, or otherwise its overall policy governing its court access program and legal copy scheme is unconstitutional and must be rendered unenforceable," and any other requests for declaratory or injunctive relief made by the plaintiff are moot, and must be dismissed.

**B.   The claims against the defendants in their official capacities are prohibited under the Eleventh Amendment to the United States Constitution.**

The defendants' Memorandum in support of their Motion to Dismiss first asserts that, although the plaintiff's Complaint fails to distinguish the particular causes of action, if any, that are asserted against the defendants in their official, as opposed to their individual capacities, the plaintiff is seeking retroactive monetary relief from the state, which is prohibited by the Eleventh Amendment to the United States Constitution. The defendants' Memorandum of Law, quoting from *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), states:

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.  We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.  The judgment of the Michigan Supreme Court is affirmed.  [Citations omitted].

Based upon this authority, the defendants assert that they are immune from suit on the plaintiff's claims in their official capacities.  (ECF No. 20 at 7.)

The plaintiff's Response asserts that the defendants are "persons" for purposes of section 1983 because, as prison officials, they constitute a "local government entity," and because they "relied on their own interpretations of so called 'Operational Procedures' which were not properly promulgated by the Division of Corrections," they are liable to suit in their official capacities.   (ECF No. 22 at 18.)   The plaintiff relies upon the Supreme Court's holding in *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658 (1978), which held that local governments, municipal corporations and school boards were "persons" under section 1983 and that local governing bodies were subject to suits for monetary, declaratory or injunctive relief.  (*Id.* at 18.)  The plaintiff further asserts that the defendants' reliance upon the Operational Procedures of MOCC, whether properly implemented or not, does not shield them from liability.  (*Id.* at 18-19.)

The plaintiff's reliance on *Monell* is misplaced because the defendants, as employees of MOCC, are not employees of a "local government body."   MOCC is a facility operated by the West Virginia Division of Corrections, a state agency, and, thus, an arm of the state.

Pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state.  *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).  The Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose a liability upon a State or State officials, which may be paid from public funds in the state treasury.  *Quern v. Jordan*,

440 U.S. 332, 337 (1979).  Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).  Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds.  *Id.* at 337. Moreover, a State is not a "person" for purposes of section 1983 litigation.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Kentucky v. Graham*, 473 U.S. 159 (1985).

The plaintiff is attempting to seek retroactive monetary relief from the State and the State's officials in this matter, which is barred by the Eleventh Amendment of the United States Constitution.  Moreover, the State is not a "person" from whom the plaintiff can seek relief under section 1983.  For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which monetary relief can be granted against the defendants in their official capacities.

### C.    The plaintiff's claim of denial of access to the courts (Count Three).

In Ground Three of the plaintiff's Complaint he alleges that, after having been found guilty of a rule violation, which was upheld through the prison appeal process, the plaintiff was housed in the prison's segregation unit and lost privileges for a period of 30 days (between October 25, 2009 and November 25, 2009).  (ECF No. 2, ¶¶ 24, 42.) During this time period, the plaintiff had a case pending in the Circuit Court of Fayette County concerning various challenges to conditions of confinement and policies at

MOCC (*Daye v. Ballard*, 09-AA-3 (Fayette Co. Cir. Ct.)[2]. (*Id.*, ¶ 25.) Paragraph 12 of the plaintiff's Complaint states that the Fayette County case made allegations regarding MOCC's policies concerning (1) the administration of the Inmate Benefit Fund, (2) the creation and application of Operational Procedure No. 5.07, in regards to possession of other inmates' legal work, (3) the interference by the prison officials with inmates assisting each other in their legal matters, (4) charging of inmates for photocopies in the library in regards to legal documents, (5) taking disk drives, and (6) charging inmates for college books. (ECF No. 2 at 5, ¶12.)

The plaintiff's instant Complaint alleges that, on November 13, 2009, while he was housed in segregation, he received an answer to his conditions of confinement suit from the West Virginia Attorney General's Office. The Complaint further states that the answer "cited numerous case decisions, statutory cites, and constitutional provisions supporting the proposition that Daye was not entitled to the relief sought." (*Id.*)

Inmates in the segregation units at MOCC are not permitted physical access to the law library; they must request copies of legal materials through what the plaintiff calls the "paging system" in his Complaint. (*Id.*) The plaintiff's Complaint further states:

> In an attempt to respond to the Attorney General's Answer Daye requested (1) specific case decisions (using the "paging system") and requested that those decisions be Shepardized by the library Aides, (2) Daye requested the assistance of an inmate Legal Aide to help research, provide legal advise [sic; advice], and to identify the correct code sections or procedural rules which Daye needed using the prison's specific cite system (See, Exhibit 4(a)). As indicated in exhibit 4(a) in response to Daye's request for

---

[2] The plaintiff refers to this civil action as a habeas corpus petition. However, because the plaintiff raised claims under the West Virginia Administrative Procedures Act, W. Va. Code § 29A-1- *et seq.*, the court docketed the matter as an Administrative Appeal (AA). The undersigned has reviewed the Final Order in the matter and has determined that the court fully considered both the issues concerning the disciplinary proceeding, and the plaintiff's other challenges concerning his conditions of confinement and the operational procedures and policies at MOCC.

legal assistance and treatise materials Defendant Crawford provided Daye with the specific case cites requested; however, Defendant Crawford did not Shepardize the cases for Daye and did not provide Daye with any assistance from Legal Aides or treatise materials.  As a consequence Daye did not know whether he could file a reply or other action in accordance with the State Court Rules Governing Habeas Corpus Proceedings, the Rules of Appellate Procedure, or the Rules of Civil Procedure.  Moreover, Daye could not respond to the Attorney General's allegation that he had originally filed the wrong petition and other remedies were available to Daye.  [FN 20]

[FN 20 – The Attorney General argued in his Answer that Daye should have filed a motion for declaratory judgment, a mandamus, or other petitions instead of an administrative appeal challenging the decision of the prison authorities.  As Daye had no way of actually reading the code he could not determine whether the Attorney General had accurately set forth the law in relation to his case.]

(*Id.*)

The plaintiff further alleges that, after being denied the requested assistance and materials, he filed a grievance to the segregation shift supervisor on November 20, 2009, addressing defendant Crawford's failure to provide him with requested assistance and materials, and asserting his right of access to the court.  (*Id.*, ¶ 26.)  On November 25, 2009, the shift supervisor responded to the grievance, stating that the plaintiff would be released from segregation that day, but failed to address the issues that were grieved.  (*Id.*)  The grievance response was upheld on appeal by Warden Ballard and the Commissioner's Office.  (*Id.*)  The plaintiff further alleges that:

As a result of Defendant Crawford's failure to provide Daye with the needed materials he requested while housed in the prison's segregation unit Daye's lawsuit filed in Fayette County was summarily denied.[3]  Daye also filed an untimely or otherwise procedurally inaccurate document as a

---

[3]  In paragraph 12 on page 5 of the Complaint, the plaintiff alleges that his Fayette County case was ultimately dismissed on February 28, 2010.  (ECF No. 2 at 5, ¶ 12.)  Here, the plaintiff alleges that the case was summarily dismissed.  However, the undersigned has obtained a copy of the Order Denying and Dismissing Petition, which was entered on January 21, 2010.  Although no hearing was held on the matter, the Fayette County court issued a 12-page Order denying and dismissing the petition, which addressed each claim in detail, and discussed the various filings the plaintiff made, including those filed while he was in segregation.

consequence of Defendant Crawford's failure to provide Daye with reference materials for instruction. (See, Exhibit 14(b)).

(*Id.*)

Paragraph 42 of the Complaint asserts that, during the 30-day period that the plaintiff was housed in segregation, defendants Crawford and Ballard caused him injury by denying him legal assistance, treatise materials, and research materials while he was prosecuting his Fayette County case.  The plaintiff further alleges that "as a result of the above stated actions of Defendant Crawford acting in concert with Defendant Ballard, Daye was unable to timely or otherwise effectively prosecute his [non]-frivolous lawsuit . . . and as a consequence of Defendant Crawford's failure to provide the requested assistance the Circuit Court of Fayette County dismissed Daye's suit."  (*Id.* at 23, ¶ 42.)

In a footnote in the Memorandum of Law in support of their Motion to Dismiss, the defendants explain MOCC's policy concerning access to the law library and legal materials as follows:

> Not only does M.O.C.C. provide inmates that are housed in a segregation unit and inmates suspended from the library specifically requested materials, the library will also provide case law and other materials related to a broad issue requested by such an inmate.  In the event that an inmate makes a broad request they are provided with numerous cases and other materials covering the topic.  The requesting inmate is then permitted three days to review the material.   If the inmate determines that the provided research is not on point or otherwise not useful he may surrender the material to the library and will not be charged for the copies.

(ECF No. 20 at 8 n.3.)  The defendants' Memorandum further states that, "[i]t is clear, based upon the face of the Plaintiff's Complaint that, between October 25, 2009 and November 25, 2009, he was housed in the punitive segregation unit of the Mount Olive Correctional Complex.  Additionally, it is equally clear that while housed in the punitive

segregation unit, while he was not permitted to physical [sic; physically] go to the library, he was permitted access to legal materials.  (*Id.* at 8-9.)

The defendants' Memorandum further states:

Prisoners must receive "that quantum of access to prison libraries – not total or unlimited access – which will enable them to research the law and determine what facts may be necessary to state a cause of action." [*Hossman v. Spradlin*, 812 F.2d 1019, 1021 (7th Cir. 1987)]; *see also Campbell v. Miller*, 787 F.2d 217, 2276 (7th Cir.), *cert. denied*, 479 U.S. 1019, 93 L. Ed.2d 724, 107 S. Ct. 673 (1986).  Security reasons, however, may justify strict time, place, and manner restrictions. [*Shango v. Jurich*, 965 F.2d 289, 292 (7th Cir. 1992)]; *Caldwell v. Miller*, 790 F.2d 589, 606 (7th Cir. 1986).  Accordingly, inconvenient or highly restrictive regulations may be entirely appropriate and not violate a prisoner's constitutional right of access, as long as the restrictions do not actually completely deny meaningful access to the courts.  *Hossman*, 812 F.2d at 1021.  *Brooks v. Buscher*, 62 F.3d 176, 179 (7th Cir. Ill. 1995).

In the instant action, with regard to Count III, based upon the allegations of the Plaintiff contained in the Complaint, it is clear that he was not completely denied meaningful access to the courts.  Therefore, it is proper for this Court to enter an Order dismissing Count III.

Count XIV of the Complaint arises out of the same operative facts and should be dismissed for the same reasons.

(*Id.* at 9.)

The defendants' Memorandum further asserts that:

the plaintiff concedes in his Complaint that inmates held in segregation units are provided access to the Courts.  More specifically, in Paragraph 25 of the Complaint, Inmate Daye alleges that while in punitive segregation he was permitted to submit request[s] for legal materials by citation and that he was provided copies of the same.  *Id. at Paragraph 25.*  The Plaintiff is not complaining that he was not provided with access to legal materials, in fact, Plaintiff concedes that he was provided with the specific cases requested; rather, he is complaining that when he submitted a request by citation Defendant Crawford failed to Shepardize the requested decision or provide Inmate Daye with any assistance from legal aides or treatise material that had not been requested.

(*Id.* at 3.)

13

The plaintiff's Response objects to the defendants' assertion that he has conceded that inmates in segregation at MOCC are provided with access to the courts. The plaintiff further maintains that he did request legal assistance and treatise materials and that he was "denied an opportunity to research, shepardize and review treatise materials which made it nearly impossible for him to access the court in a meaningful manner which ultimately resulted in the denial of his lawsuit in State Court." (ECF No. 21 at 1-2.) The plaintiff further asserts that "unwritten prison policy which was in effect prior to his placement in segregation made it abundantly clear that he would not be provided with any legal assistance from library aides in the research and development of his court matters." (*Id.* at 2.)

The plaintiff's Response includes a Memorandum which addresses his denial of access to the court claims as follows:

> Ultimately, claims of denial of access to the courts are governed by the principles laid down in *Lewis v. Casey*, 518 U.S. 343 (1996), *Bounds v. Smith*, [430] U.S. 817 [(1977)], *Johnson v. Avery*, 393 U.S. 483 (1969). In *Chambers v. Baltimore & Ohio Railroad*, 207 U.S. 142, 28 S. Ct. 34, 52 L. Ed. 143 (1907), the Supreme Court of the United States characterized this right to court access in the following terms:
>
> > The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each state to the citizens of all other states to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the states, but I [sic; is] granted and protected by the federal constitution.
>
> The United States Supreme Court makes it clear that the right to access the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. Thus, reliance on untrained inmate "legal clerks" as a substitute to library access

is unacceptable.  See, *e.g., Glover v. Johnson*, 850 F. Supp. [592] ([E.D. Mich.] 1994); *Knop v. Johnson*, 977 F.2d 996 ([6th Cir. 1992]).

In the present case Daye intends to demonstrate that the "exact/cite paging system" used by Mount Olive's segregation unit failed to provide Daye and inmates housed there with either access to a library facility or assistance from those trained in the law.  Daye also submits to this court that due to the deficiencies in Mount Olive's court access program his meritorious legal matters were ultimately dismissed.

(ECF No. 22 at 1-2.)

The plaintiff's Memorandum further addresses his specific complaint with the system for providing legal materials to segregated inmates at MOCC as follows:

On or about November 13th, 2009, while housed in the prison's segregation unit Daye requested the assistance of a legal aide to "shepardize," review and research his legal work.  Daye also requested treatise materials to learn the procedural rules in relation to his legal claims.  Defendant Crawford simply ignored Daye's request.  As to his request for treatise materials [FN 1] Defendant [Crawford] sent Daye a one page response stating – "We do not loan reference books" (Attachment-A).  Daye then filed a grievance in relation to his treatment (Attachment-B), complaining of Defendant's failure to provide him with the needed assistance to pursue his legal claims.  It then took the prison officials five days to respond to this grievance.  The response was simply "Mr. Daye, you will be released from the Quilliams unit today" (Attachment-B).  Moreover, the inmate assistance program at Mount Olive is administered in an arbitrary manner.  This is demonstrated by the record in this case wherein inmate John McLaurin was provided assistance from inmate James Dunn who after reviewing McLaurin's legal papers, assisted in the research, shepardizing and typing (Attachment-C).  Thereafter, without warning or prior notice the prison authorities discontinued further assistance to McLaurin from Dunn claiming that inmates in the Quilliams Unit are not to correspond with those in the population.  (Attachment-E).  [FN 2]

[FN 1 – State Court Rules/Rules of Civil Procedure]

[FN 2 – Daye does not intend to attempt to litigate McLaurin's issues in this action.  He only wishes to make the point, with record evidence, that Mount Olive's legal assistance program is applied in an arbitrary manner, it hinders an inmate['s] ability to effectively pursue their legal claims, and it is therefore inadequate to stand the test of *Johnson, Casey* and *Lewis*.]

15

In case after case courts examining prison attempts to enforce an exact-cite paging system make it clear that if prison administrators wish to restrict a prisoner's access to libraries, they must offer some sort of assistance from persons trained in the law, and reliance on untrained legal clerks is simply not the form of legal assistance contemplated in *Casey*, *Lewis* and *Johnson*. Also, see, *Glover v. Johnson*, 850 F. Supp. [592] ([E.D. Mich.] 1994); *Madrid v. Gomez*, 190 F.3d 990 (9th Cir. 1999); *Alvarez v. Hill*, 518 F.3d 1152 ([9th Cir.] 2008); *Rean v. City of Las Vegas*, 2010 U.S. Dist. Lexis 131141 [(D. Nev., Nov. 29, 2010)] (exact-cite/book-paging system held unconstitutional); *Neff v. McDaniel*, 2010 U.S. Dist. Lewis [sic; Lexis] 102[4]68 [(D. Nev., Aug. 27, 2010)] (The Ninth Circuit abolishes the exact-cite/paging system as a prisoner's sole means of access to the courts).[4]

(*Id.* at 2-4.)  The plaintiff also asks the court to take judicial notice of the fact that the cases cited by the defendants in their brief support the conclusion that MOCC's court access program is inadequate.[5]  (*Id.* at 4.)

The plaintiff's Memorandum further asserts that the plaintiff was actually injured by his denial of access to requested legal materials because his lawsuit in the Circuit Court of Fayette County was dismissed.  Thus, the plaintiff contends that the question of whether he was denied <u>meaningful</u> access to the courts must be resolved in his favor.  (*Id.*)   Finally, the plaintiff's Memorandum asserts that MOCC's policy concerning the

---

[4]  The plaintiff's characterization of the two decisions from the District of Nevada (*Rean v. City of Las Vegas* and *Neff v. McDaniel*, *supra*, are misleading or, in the case of *Neff*, actually wrong.  In *Rean*, the District Court found that the use of an "exact-cite/book paging" system, that required inmates to make specific requests for materials without any list of titles or other descriptions of the available resources, in a case where the inmate alleged an actual injury concerning the filing of several pending criminal and civil matters, stated a claim upon which relief could be granted against the law librarian.  It did not make a ruling on the ultimate constitutionality of the process.  In *Neff*, the District Court dismissed a similar claim because the plaintiff had not alleged or demonstrated an actual injury.  Furthermore, the *Glover* decision cited by the plaintiff is part of a series of cases concerning a class action lawsuit addressing various conditions of confinement claims of female prisoners in Michigan.  Those cases appear to have been litigated since at least 1979.  The specific decision cited by the plaintiff herein does not address an "exact-cite/book paging system."  However, a later decision, *Glover v. Johnson*, 931 F. Supp. 1360 (E.D. Mich. 1996), *affirmed in part and reversed in part by Glover v. Johnson*, 138 F.3d 229 (6th Cir. 1998), does address that issue.  Nevertheless, because the plaintiff herein has not established an actual injury due to the "exact-cite/book paging system," the undersigned finds it unnecessary to further address the authority offered by the plaintiff.
[5]  The undersigned notes that this is not the proper use of judicial notice.

exact-cite paging system fails to take into account those inmates who cannot read or comprehend legal matters.  His Memorandum further states:

> It must therefore be assumed that when the United States Supreme Court mandated that prisons provide inmates with access to libraries or assistance from those trained in the law, the court considered the many different characters of prisoners which were affected and their various abilities to access the courts in light of their status in prison.  The court is simply asked to apply this rule of law to the fact of this case.  The principles of stare decisis dictate nothing less.

(*Id.*)

As previously noted, the undersigned has obtained and reviewed the Order Denying and Dismissing Petition in the plaintiff's Fayette County case.  The case was initially opened upon the filing of a document entitled "Administrative Appeal," with certain exhibits and appendices, among other pertinent filings.  The presiding Circuit Judge, the Honorable Paul M. Blake, stated the following in a footnote on page one of the Order:

> FN 1 – The petitioner styled his action as an administrative appeal governed by the *West Virginia Administrative Procedures Act* (W. Va. Code § 29A-1 *et seq.*)  The petitioner set forth a number of arguments in his *Response to Motion to Dismiss* as to why the Court can and/or should consider his action as an administrative appeal.  The Court reviewed said arguments and found the same unpersuasive and contrary to the intention and policies behind both the *West Virginia Administrative Procedures Act* and the *West Virginia Prisoner Litigation Reform Act.*

*Order Denying and Dismissing Petition*, at 1 n.1, Daye *v. Ballard*, Case No. 09-AA-3 (Fayette Co. Cir. Ct., Jan. 21, 2010) (Blake, J.)   The Order further explains that the plaintiff filed additional documents, including a Motion for Preliminary Injunction, with exhibits and an Affidavit, on October 22, 2009, an Order to Show Cause and Temporary Restraining Order, with attachments and an Affidavit, on November 3, 2009, a Motion to File Petitioner's Reply Out of Time and Petitioner's Reply to Respondent's Motion to

Dismiss, on December 8, 2009, and a Renewed Motion for Temporary Injunction on

December 30, 2009.  *Id.* n.2.

The Order Denying and Dismissing Petition describes the plaintiff's state court

filings as follows:

> 5.     Taken as a whole, the petitioner's filings seek to challenge certain
> conditions of confinement at MOCC.  The petitioner alleges that MOCC's
> actions, procedures, and policies deny inmates their rights, duties,
> privileges and/or interests, and otherwise interfere with their lives in an
> arbitrary, capricious, and/or unconstitutional manner and further alleges
> that his rights as guaranteed by the United States Constitution and the
> West Virginia Constitution have been violated.
>
> 6.     The petitioner complains of his conviction in *Disciplinary Violation
> No.* MOCC-09-0573-G, *Rule 2.11 Possession of Contraband*, (specifically
> legal work of other inmates and the medical records of another inmate as
> prohibited by *Operational Procedure 5.07*.)  The Court notes that on July
> 27, 2009, petitioner pled <u>*no contest*</u> to *Disciplinary Violation No.* MOCC-
> 09-0573-G, *Rule 2.11 Possession of Contraband*.  On August 5, 2009, the
> petitioner appealed his conviction to the Warden and on August 21, 2009,
> the petitioner appealed to the Commissioner.  The petitioner's conviction
> was affirmed.
>
> 7.     The bulk of the petitioner's complaints concern certain MOCC
> policies and procedures.   The petitioner complains of Mount Olive
> Correctional Complex's ("MOCC") procedures and/or policies concerning
> the administration of the Inmate Benefit Fund ("IBF"), and the creation
> and application of *Operational Procedure 5.07*.

*Id.* at 2.

Judge Blake ultimately found that the West Virginia Administrative Procedures

Act substantially exempts the Division of Corrections, *see* W. Va. Code § 29A-1-3, and

that the plaintiff's action was, instead, governed by the West Virginia Prisoner Litigation

Reform Act, W. Va. Code § 25-1A-1 *et seq.*, which includes a requirement to exhaust all

available administrative remedies before filing suit.  *See* W. Va. Code § 25-1A-2.  Judge

Blake further found that, although the plaintiff had exhausted his administrative

remedies concerning his disciplinary violation, the plaintiff had failed to properly

exhaust his other claims, with the possible exception of his complaint regarding MOCC not paying for college textbooks through the IBF. Thus, the court dismissed the plaintiff's unexhausted claims. *Id.* at 4-6.

Specifically, Judge Blake found as follows concerning the exhaustion of the plaintiff's claims challenging the policies that led to his being charged with rule violations:

> 6. The Court CONCLUDES that an appeal of a disciplinary action pursuant to *Policy Directive 325.00* is not the proper method for challenging MOCC's procedures and policies which [go] beyond the rule violation/prison discipline. MOCC's *Policy Directive 335.00* provides an inmate grievance procedure for "*. . . all matters except classification . . . and inmate discipline . . . .*" An appeal of a disciplinary action does not satisfy the exhaustion requirement for anything other than a challenge to a disciplinary action.

> 7. The petitioner challenged the aforementioned disciplinary action through MOCC's *Policy Directive 325.00* appeals process. Through said appeal, it appears the petitioner sought to challenge implementation of operational procedures and other matters through his *Policy Directive 325.00.* The Court CONCLUDES that such challenges should have been presented through the inmate grievance procedures under *Policy Directive 335.00.*

> 8. Thus, the Court CONCLUDES that the petitioner herein has only exhausted administrative remedies with regard to his being adjudicated guilty following his no contest plea to *Disciplinary Violation No.* MOCC-09-0573-G, *Rule 2.11 Possession of Contraband* and his "sentence" of forty hours extra duty for the same.

*Id.* at 5-6. Judge Blake further found that the plaintiff's due process rights were not violated during his disciplinary proceeding, and that his conviction for possession of contraband was based upon sufficient evidence. *Id.* at 6, ¶ 8.

The dismissal of the plaintiff's claims for failure to exhaust administrative remedies is based upon a statutory requirement that is grounded in the prison's operational procedures, which are available to inmates outside of the law library and

have no connection to access to legal materials.  Thus, the undersigned proposes that the presiding District Judge **FIND** that MOCC's policies and procedures concerning access to the law library and legal materials by segregated inmates, and the defendants' application of those policies and procedures to the plaintiff while he was in segregation, did not deny the plaintiff meaningful access to the courts concerning his claims that were dismissed for failure to exhaust administrative remedies.

Furthermore, exhaustion notwithstanding, the plaintiff's claims in his Fayette County action concerning various conditions of confinement, and the allegedly arbitrary and unofficial policies pertaining thereto, were dismissed on their merits as being frivolous.  These include the plaintiff's claims concerning the administration of the IBF and his claims concerning the prison's policies charging inmates for photocopies, prohibiting use of computer disks and disk drives, prohibiting possession of other inmate's legal work and records, and prohibiting the preparation of documents for other inmates, other than by an authorized legal aide.  *Order Denying and Dismissing Petition*, *supra*, at 7-11.

The plaintiff has not alleged or demonstrated that the case law he cited in the briefs he filed in the state courts have been overruled or were otherwise inapposite. Thus, the undersigned is not persuaded by the plaintiff's claim that he was denied meaningful access to the court because defendant Crawford did not permit someone to "Shepardize" his requested citations.  Moreover, the plaintiff has not demonstrated that access to any additional legal materials would have altered the decision of the Circuit Court.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not established any actual injury in the form of denial of

meaningful access to the courts.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Count Three of the plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to *Twombly* and *Iqbal.*

### D.    The plaintiff's retaliation claims (Counts Four and Nine).

In Counts Four and Nine of his Complaint, the plaintiff alleges that, on or about April 30, 2010, defendants Crawford and Collins conspired to retaliate against the plaintiff for exercising his own right to redress grievances in the courts and for assisting another inmate with his legal work by suspending the plaintiff from the law library for a period of 30 days.  The plaintiff alleges that this action violated his right to access the courts, as well as his rights to due process and equal protection.  (ECF No. 2 at 23-24.) The Complaint also alleges that, in furtherance of the conspiracy, defendant Collins authorized defendant Crawford to suspend the plaintiff's access to the law library.  (*Id.* at 26, ¶ 54.)

In support of these claims, the plaintiff alleges that, on or about March 24, 2010, defendant Crawford had authorized the plaintiff to assist inmate Michael Hicks, by giving advice concerning his legal matter, but Crawford further instructed that the plaintiff could not type Hicks' documents for him; rather, a library aide was assigned to do the typing for Hicks.  (*Id.* at 15, ¶ 27.)  Despite this authorization, the plaintiff alleges that, on or about April 29, 2010, defendant Crawford sent two other employees to the library to witness the plaintiff assisting Hicks and writing a letter to his own attorney, and then used that conduct as a basis to suspend the plaintiff's law library privileges. (*Id.*)

The plaintiff's Complaint further alleges that, after filing a grievance concerning his suspension, Commissioner Jim Rubenstein reversed that decision, stating that "absent a finding by a correctional hearing officer that Inmate Daye engaged in a violation of the rules of the facility, the library is expected to abide by these provisions." (*Id.* at 16, ¶ 29.)   The plaintiff further alleges that defendants Crawford and Collins nonetheless refused to allow the plaintiff into the law library until the 30 days had concluded.  (*Id.*)

The defendants' Memorandum asserts that, although these claims are labeled as retaliation claims, they are actually, once again, claims concerning the denial of access to the courts.  (ECF No. 20 at 4.)  The defendants further assert that the plaintiff has conceded that, while he was suspended from the library, he still had access to legal research materials by making written requests, and that he has failed to allege that the suspension of his law library privileges prevented him from prosecuting any particular claim pending in a court at that time.   (*Id.*)   Rather, the plaintiff alleges that his suspension hindered the legal efforts of another inmate, upon whose behalf this plaintiff has no standing to assert a claim.  (*Id.* at 4, 9-10.)

The defendants further assert that, despite the plaintiff's contention to the contrary, Operational Procedure 5.07 clearly provides for the suspension of library privileges for violating library rules.  (*Id.* at 9 n.4.)  The defendants assert that, because of the security concern of inmates charging other inmates for performing legal work, such activity is viewed as "trading and selling," and is a violation of the prison's operational procedures.  (*Id.* at 10 n.5.)

In his Response, the plaintiff objects to the characterization of these claims as simply denial of access to the courts claims.  Rather, the plaintiff contends that he has

sufficiently pled a retaliation claim based upon the defendants' punishment of him for accessing the court. (ECF No. 21 at 2.) The plaintiff further contends that he was injured by this adverse action, because (1) "his confidential attorney-client privileged communications were divulged to the opposition in his underlying criminal case" and (2) "he and those similarly situated to him were *chilled* by the retaliatory conduct inasmuch as he [the plaintiff] was reluctant to provide further assistance to inmates who needed it for fear of more retaliation by the prison officials and he became paranoid in entering the library due to the consistent pattern of retaliation he suffered from the hands of the Defendants while accessing the courts." (*Id.* at 2-3.)

A plaintiff suing under section 1983 must establish three elements in order to prove a retaliation claim. First, the plaintiff must demonstrate that he was exercising a constitutional right. *See Huang v. Board of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990). Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutional right. *See ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (stating that "a showing of adversity is essential to any retaliation claim"). Third, the plaintiff must demonstrate that a causal relationship exists between the exercise of the right and the defendant's retaliatory action. *See Huang*, 902 F.2d at 1140.

Thus, for an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). The plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimensions. *Adams*, 40 F.3d at 74-75.

The plaintiff cannot show that a directive that he not assist another inmate concerning the other inmate's legal work is denial of access to the courts.  Moreover, the plaintiff has not demonstrated that the alleged retaliatory action of defendants Crawford and Collins in suspending the plaintiff's library privileges caused him actual injury.  The plaintiff has not alleged that he or his attorney was unable to meet a court deadline in this time frame as a result of his suspension, or that his access to the courts was in any way "chilled" as a result of the defendants' conduct.  The plaintiff's filing of the instant lawsuit demonstrates that his right to access the courts has not been chilled.  Moreover, the plaintiff cannot rely on the alleged chilling effect such conduct might have on other inmates, which he has attempted to argue herein.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that, liberally construed, Counts Four and Nine of the plaintiff's Complaint do not contain "enough facts to state a claim to relief that is plausible on its face."  The plaintiff's retaliation claims have alleged nothing more than legal conclusions couched as factual allegations, and he has not met the elements for such a claim.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Counts Four and Nine of the plaintiff's Complaint fail to state a claim upon which relief can be granted, and should be dismissed pursuant to *Twombly* and *Iqbal.*

### E.      The plaintiff's deliberate indifference/supervisory liability claim against Warden David Ballard (Count Ten).

In Count Ten of his Complaint, the plaintiff has alleged that defendant David Ballard has failed "to adequately train defendants Collins and Crawford in a reasonable manner in order that the Defendants named in this action will have proper understanding of their legal obligations in regards to the constitutional rights of inmates

and the limits of their respective powers as the Associate Warden of Programs (Jason Collins) and the prison's Librarian (Mark Crawford)."   (ECF No. 2 at 27, ¶ 56.)   The plaintiff's Complaint further alleges that, from July 1, 2009, continuing beyond June 10, 2010, defendant Ballard had actual knowledge that the plaintiff was being injured by the unconstitutional conduct of defendants Crawford, Collins and Dixon, and that he tacitly authorized or otherwise encouraged such injury to the plaintiff, particularly the efforts to hinder his right to access the courts.   (*Id.*)

The defendants' Memorandum of Law asserts that the plaintiff "essentially seeks to hold Warden Ballard liable merely because he is the supervisor, directly or indirectly, of the other Defendants."   (ECF No. 20 at 13.)   Generally speaking, there is no "supervisory liability" under 42 U.S.C. § 1983, as *respondeat superior* cannot form the basis of a claim asserted under the statute.  *Id.* at *3, citing *Rizzo v. Goode*, 423 U.S. 362 (1976).   Instead, liability must be premised upon each defendant's personal constitutional violations.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Prior to the Supreme Court's ruling in *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), the Fourth Circuit established "the principle that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).  A named supervisor may be liable for acts of subordinates if the official was aware of a pervasive, unreasonable risk of harm from a specified source and failed to take corrective action as a result of his deliberate indifference or tacit authorization of the offensive practice.  *Id.* at 373.

Liability may attach where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they

inflict on those committed to their care." *Id.* at 372.  The relevant inquiry is whether the defendants acted "wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." *Moore v. Winebrenner*, 927 F.2d 1312, 1315 (4th Cir. 1991).

The undersigned has proposed that the presiding District Judge **FIND** that the plaintiff has failed to establish that he was denied access to the courts and has not demonstrated any actual injury based upon the conduct of the individual defendants over whom defendant Ballard has supervision.  Accordingly, because the plaintiff has failed to establish any actionable constitutional violations, any allegations of supervisory liability related to those claims must also be dismissed.

### F.     The plaintiff's due process and equal protection claims (Count Fourteen).

In Count Fourteen of his Complaint, the plaintiff alleges that:

> Defendant Crawford did violate Daye's right to due process of law when Crawford both suspended Daye from the library at Mount Olive for a period of 30 days and initiated disciplinary proceedings against him for "typing" legal work for both Leroy Mower and John Lynch, were [sic; where] at the time of the infliction of the punishment against Daye by the Defendants there was no prison policy properly promulgated by the prison authorities which prohibited Daye from typing legal work for other inmates and the Defendants had no legal right to take such action against Daye.  Additionally, Daye contends that the Defendants are liable for violations of his due process rights wherein the notice of suspension did not state any reason other than "violating library rules" failing to specify the specific rule violated by Daye.  This conduct violated both the equal protection and due process rights of Daye where the prison authorities did [not] treat similarly situated inmates in like manner who did not engage in assisting other inmates in their legal matters at the prison.

(ECF No. 2 at 29; ECF No. 21 at 5.)

The defendants assert that Count Fourteen arises out of the same operative facts as Count Three (asserting a denial of access to the courts, which the undersigned previously addressed), and contend that it should be dismissed because the plaintiff has

Case 2:11-cv-00106 Document 37 Filed 03/02/12 Page 27 of 34 PageID #: 194

not established that he was denied meaningful access to the courts while he was suspended from the law library, and has alleged no other actual injury based upon that decision. (ECF No. 20 at 9.) The defendants do not further address this claim.

The plaintiff's Response attempts to clarify his claim in Count Fourteen, stating that it is "a claim for denial of due process of law in regards to the Defendants['] suspension of Daye from the library, harassment, and the humiliation Daye was subjected to as a consequence of typing legal work for Leroy P. Mower and John Lynch on or about October 18, 2009." (ECF No. 22 at 5.) The plaintiff's Response then discusses, for several pages, his assertion that MOCC has "arbitrary practices of making rules not properly promulgated by the Division of Corrections for the conduct of inmates and application of those policies, without notice to the inmate population, which allows prison staff to unilaterally punish inmates in contravention of <u>State law and Division of Corrections policy</u>." (ECF No. 22 at 6)[Emphasis added]

The plaintiff's Response further adds:

> The arbitrary nature of [the rule prohibiting typing legal documents for other inmates] and its enforcement by the prison is obvious in this case where the prison officials have charged Daye several times and punished Daye several times for allegedly *trading and selling*, *contraband*, and suspended him due to his typing of legal matters.

(*Id.* at 7.) The plaintiff then emphasizes that he is not challenging his disciplinary proceedings or the sanctions he received. Rather, he "merely seeks declaratory judgment declaring the practice of arbitrary punishment at Mount Olive for providing assistance to other inmates illegal, until and unless the prison authorities properly promulgate rules approved by the Division of Corrections for the criminalization of such activities." (*Id.* at 9.) However, the plaintiff also states that he is seeking monetary

damages for what he alleges is a clearly-established a violation of his due process rights. (*Id.*)

*Due Process Claim*

Count Fourteen of the plaintiff's Complaint is convoluted.  First, to the extent that the plaintiff is attempting to state a violation of his due process rights (either substantive or procedural) under the federal constitution, he must be able to show that he has a liberty or property interest to be protected.  *See Sandin v. Conner*, 515 U.S. 472 (1995) and *Wilkinson v. Austin*, 545 U.S. 209 (2005).  The plaintiff's placement in punitive segregation for a period of 30 days, without a loss of good time credit, did not create an atypical and significant hardship that would give rise to a liberty interest. *Sandin*, 515 U.S. at 484-486.  Nor did the plaintiff's suspension from the law library or his loss of any other privileges imposed as a result of the alleged rule violations create such an interest, and the plaintiff has disavowed that his claim is based on this line of cases.  (ECF No. 22 at 6.)  Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to allege a cognizable due process claim under the United States Constitution and, thus, his claim for monetary damages for a due process violation must fail.

Second, to the extent that the plaintiff is asserting that MOCC's practice of imposing rules that have not been promulgated in accordance with state law and Division of Corrections policy, that is strictly a matter of state law.  The undersigned will address that aspect of this claim in section G *infra.*

Finally, to the extent that the plaintiff has stated that he is seeking a declaratory judgment, the undersigned has previously addressed the fact that such a claim is now

moot in light of his transfer to Huttonsville Correctional Center, and the plaintiff has no standing to raise this claim on behalf of other inmates still at MOCC.

*Equal Protection Claim*

The plaintiff's other Response document also attempts to explain his equal protection claim raised in Count Fourteen.  (ECF No. 21 at 5.)  He asserts that his claim is based on the fact that inmate-to–inmate assistance is encouraged in educational, academic, recreational and other matters that do not concern assisting inmates with their legal work, and that inmates who do not attempt to assist other inmates with their legal work do not get harassed or charged with rule violations like those who do.  (ECF No. 21 at 5.)  Even with this clarification, the plaintiff's claim in Count Fourteen fails to satisfactorily allege a violation of the Equal Protection Clause of the United States Constitution.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Count Fourteen fails to state a claim upon which relief can be granted, and should be dismissed pursuant to *Twombly* and *Iqbal.*

**G.     The plaintiff's state law claims (Counts Six, Twelve and Fourteen).**

*Count Six*

In Count Six of his Complaint, the plaintiff alleges that, on June 4, 2010, defendant Crawford initiated a disciplinary action against the plaintiff that was not supported by probable cause, was maliciously undertaken with the specific intent to injure the plaintiff, and that ultimately terminated in the plaintiff's favor.  (ECF No. 2 at 24-25.)  The plaintiff further alleges that this conduct supports a state law claim for malicious prosecution or abuse of process.  (*Id.*)

The defendants' Memorandum of Law in support of their Motion to Dismiss asserts that, to the extent that the plaintiff is attempting to raise his malicious prosecution claim under section 1983, such a claim must be analyzed under the Fourth Amendment.  (ECF No. 20 at 11-12.)  The defendants' Memorandum of Law further asserts that, even taking the plaintiff's allegations as true, he has failed to allege any injury that could have been proximately caused by the defendants because he suffered no actual punishment or other negative consequences as a result of the allegations.  (*Id.* at 12.)  Moreover, the defendants contend that, when the institutional magistrate made the independent decision to go forward with the hearing, despite Crawford's memorandum requesting dismissal of the charges, the causal chain was broken and Crawford was insulated from any liability for lack of probable cause.  (*Id.*)

The plaintiff's Response emphasizes that he is bringing his malicious prosecution or abuse of process claim as a <u>state law claim under this court's supplemental jurisdiction</u>, and, thus, the elements of a Fourth Amendment claim are not applicable. (ECF No. 21 at 3; ECF No. 22 at 14.)  Accordingly, this federal court will treat Count Six exclusively as a state law claim.

Section 1367 of Title 28 provides the United States District Courts with jurisdiction to consider state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c), a district court may decline to exercise its supplemental jurisdiction over a claim in certain circumstances, including where all of the claims over which the court has original jurisdiction have been dismissed.  Here, the undersigned has recommended the dismissal of all of the claims over which this District Court has

original jurisdiction.   Thus, the presiding District Judge may decline to exercise supplemental jurisdiction over these state law claims.

Even if the presiding District Judge were to exercise supplemental jurisdiction over the plaintiff's state law claims of malicious prosecution and/or abuse of process, the plaintiff has not alleged or demonstrated any actual injury resulting from his write-up by defendant Crawford for "Refusing an Order."  As noted by the defendants in their Memorandum of Law, the plaintiff suffered no actual punishment, and he has not alleged that he suffered any other negative consequences resulting therefrom.

Accordingly, the undersigned proposes that, if the presiding District Judge does not decline to exercise supplemental jurisdiction over the plaintiff's state law claims, he should **FIND** that the plaintiff cannot establish a compensable injury and, thus, Count Six of his Complaint fails to state a claim upon which relief can be granted, and should be dismissed pursuant to *Twombly* and *Iqbal.*

### Counts Twelve and Fourteen

In Count Twelve of his Complaint, the plaintiff alleges that his due process rights under the West Virginia Constitution were violated because defendant Crawford "initiated a rule and punish[ed] Daye based thereon for the alleged offense of 'possession of other people's legal work' when such an offense is not a violation of official Division of Corrections Policy and which rule was not properly promulgated in accordance with State Law."  (ECF No. 2 at 28.)  In Count Fourteen, the plaintiff repeats his contention that MOCC has imposed violations against him based upon rules that were not properly promulgated under state law and policy, and again alleges a violation of his due process rights under the state constitution.  (*Id.* at 29.)

These issues are exclusively matters of state law.  Furthermore, as noted in detail by Judge Blake in the plaintiff's Fayette County proceeding, courts must give great deference to prison officials and not interfere with the day-to-day management of prison systems.  See *Sandin v.* Conner, 515 U.S. 472 (1995).

Because the plaintiff's claims in Counts Twelve and Fourteen call into question the promulgation of rules under state law, invade the management process of the state prison system, and do not address any federal constitutional issues, the undersigned proposes that the presiding District Judge decline to exercise supplemental jurisdiction over Count Twelve, and Count Fourteen, to the extent it is not otherwise addressed above.

### H.      Application of Rooker-Feldman Doctrine.

A review of the Order Denying and Dismissing Petition in the plaintiff's Fayette County case, *Daye v. Ballard*, Case No. 09-AA-3 (Fayette Co. Cir. Ct., Jan. 21, 2010), demonstrates that the plaintiff previously raised substantially similar claims to those raised herein.  The plaintiff's state court proceeding appears to have addressed the following allegations that are again raised herein:  allegations concerning the improper implementation of Operational Procedure 5.07 under state law; allegations that the implementation of Operational Procedure 5.07 violates inmates' due process rights; allegations that Operational Procedure 5.07 is ambiguous, arbitrary and capricious; allegations that the various prohibitions  and policies under Operational Procedure 5.07 are unduly restrictive, and violate inmates' right of access to the courts; allegations that the various prohibitions and policies contained in Operational Procedure 5.07 violate the separation of powers doctrine and inmates' rights to due process and equal protection; allegations that, in enacting these policies and procedures, the Warden

abused his powers; and allegations that these policies and procedures are void and unenforceable. *Order Denying and Dismissing Petition, supra*, at 3-4. The Circuit Court denied and dismissed each of these claims. The plaintiff then filed the instant lawsuit, raising substantially similar claims. *Id., passim*.

The United States Supreme Court made clear in *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), that "federal courts are divested of jurisdiction 'where entertaining the federal claim should be the equivalent of an appellate review of the state court order.'" *Friedman's Inc. v. Dunlap*, 290 F.3d 191, 196-98 (4th Cir. 2002)(quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997)); *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997)(*Rooker-Feldman* applies when the federal action "essentially amount[s] to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court"). The doctrine applies to claims which are "inextricably intertwined with the state court's [decision] in a judicial proceeding" and it applies "even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 482 n.16, 486.

The plaintiff's claims in his instant Complaint amount to an attack on the judgment of the state court, or simply a second bite at the apple. These are precisely the types of issues prohibited for consideration by a federal court under the *Rooker-Feldman* doctrine. Accordingly, in the alternative, the undersigned proposes that the presiding District Judge **FIND** that this court lacks subject matter jurisdiction over the specific claims raised in the instant Complaint that were previously addressed and denied in the state court.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Defendants' Motion to Dismiss (ECF No. 19) and dismiss this civil action with prejudice.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendations and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

March 2, 2012

Mary E. Stanley
United States Magistrate Judge

34